UNITED STATES of America, Appellee,

v.

**Bernard Jerome LEE, a/k/a James Wesley Carter, Appellant.**

**No. 75–1068.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1976.

Decided May 17, 1976.

Certiorari Denied Oct. 18, 1976.

See 97 S.Ct. 255.

---

11. The district court found that some interstate trips were made by contracting the work to other carriers.

Gerald A. Kroop, Baltimore, Md. (Court-appointed), for appellant.

James A. Rothschild, Atty., U. S. Dept. of Justice, Washington, D. C. (Jervis S. Fin-

ney, U. S. Atty., Baltimore, Md., Peter M. Shannon, Jr., and Michael J. Remington, Attys., U. S. Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Bernard Jerome Lee appeals his conviction for possession of a firearm in violation of 18 App.U.S.C. § 1202(a).[1] His principal contentions are (1) that evidence admitted against him was seized in an illegal search; the search is asserted to have been illegal because of an alleged material inaccuracy in a government agent's affidavit in support of an application for a search warrant; (2) that it was error to admit a witness' prior inconsistent grand jury testimony as substantive evidence; and (3) that the sentencing judge should not have taken into consideration evidence obtained in violation of the fourth amendment in fixing his punishment. We hold (1) that in the absence of intentional or reckless falsity by the affiant, a defendant is precluded from challenging, by way of a motion to suppress evidence, an affidavit sufficient on its face to establish probable cause; (2) a witness' prior inconsistent statement made under oath, as before a grand jury, may be received as substantive evidence; and (3) reliable but illegally-obtained evidence may generally be considered by the sentencing judge. We therefore affirm.

1. In pertinent part, the statute provides:
   (a) Any person who—
      (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. No issue is made of Lee's standing to seek exclusion of the evidence, since the government sought to show at trial that Lee had an interest in the premises sufficient to convict him for possession of firearms found there. Nor is there any dispute that admission of the evidence, if error, was not harmless; it includ-

## I.

At Lee's trial, evidence seized by agents of the Bureau of Alcohol, Tobacco and Firearms in search of premises at 4402 Fernhill Avenue, Baltimore, Maryland, was admitted over his objection.[2] The search was authorized by a warrant issued on August 24, 1973, by a United States Magistrate, on the basis of an affidavit by Special Agent William J. McMonagle of the Bureau. Although we do not quote the affidavit, it may be summarized as follows:

On July 30, 1973, one Katie Pearl Williams purchased a Colt AR–15 rifle from a federally-licensed firearms dealer in Baltimore. The rifle had moved in interstate commerce. In completing the forms necessary to effect the transaction, Williams denied ever having been convicted of a crime punishable by imprisonment for more than one year. On August 8, 1973, Williams purchased a Smith and Wesson revolver from the same dealer. The revolver also had travelled in interstate commerce. Williams again denied having been convicted of a crime punishable by more than one year's imprisonment.

The records of the District Court of Maryland reflected the conviction on June 6, 1972, of a Katie Lou Pearl Williams for possession of a deadly weapon, a crime which is punishable by imprisonment for not more than three years. On August 23, 1973, Agent McMonagle interviewed Williams. She admitted to being the person who was the subject of the June 6, 1972, state court action.[3] She

ed the firearms with whose possession Lee was charged.

3. Agent McMonagle stated in his affidavit that Williams told him that she was "found guilty" of possession of a deadly weapon. The government argues that, independently of whether Williams was actually "found guilty," her statement could be taken at face value for purposes of establishing probable cause. The difficulty is that it is unclear from the affidavit whether these are the exact words Williams used, or represent an inference on the part of McMonagle. Were we to allow an attack on the affidavit, it would become necessary to resolve this issue, assuming Williams had not in fact been "found guilty." Since we decline to entertain a challenge to McMonagle's affida-

further admitted that she had purchased the two firearms. She stated that she had taken the weapons to her boyfriend's house at 4402 Fernhill Avenue.

On the basis of this and other information (not material here) contained in McMonagle's affidavit, the magistrate found that there was probable cause to believe that a firearm was being concealed at 4402 Fernhill Avenue, in violation of 18 App.U.S.C. § 1202(a), which makes it a crime for any person who has been convicted by a state or federal court of a felony to possess a firearm; and the warrant was issued.

Lee claims that Williams was in fact not convicted of a felony within the meaning of 18 App.U.S.C. § 1202(a), because her conviction was entered upon a plea of *nolo contendere*. Lee argues that under Maryland law [4] such a conviction has no effect outside the case in which it is entered, and that therefore it should not trigger the disability from possessing firearms imposed by 18 App.U.S.C. § 1202(a). It follows, so the argument runs, that there was therefore not probable cause on August 24, 1973, when the warrant was issued, to believe any crime had been committed; that the warrant was thus invalid; and that the ensuing search was therefore illegal and its fruits should not have been admitted into evidence against Lee.

Were we to reach this issue and decide that a Maryland conviction entered upon a *nolo* plea is not a "conviction" under the

federal firearms statute, we would be compelled to hold that the seized evidence should have been suppressed, for there is no doubt that the fact of Williams' "conviction" was material to a finding of probable cause. We find it unnecessary to decide the question, however, because we conclude in the instant case that Lee has neither alleged nor shown a legally sufficient basis on which to attack the accuracy of the statements contained in the affidavit.

Although the basis of our decision was neither raised nor briefed by the parties, the question of the extent to which a person challenging the existence of probable cause may go behind the face of an affidavit has received divers answers from the federal courts.[5] The Supreme Court "has never passed directly on the extent to which a court may permit such examination [of the warrant's validity] when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause' . . . ." *Rugendorf v. United States*, 376 U.S. 528, 531–32, 84 S.Ct. 825, 827, 11 L.Ed.2d 887 (1964). Early cases held the allegations of the affidavit conclusive. *Kenney v. United States*, 81 U.S.App.D.C. 259, 157 F.2d 442 (1946); *United States v. Brunett*, 53 F.2d 219, 225 (W.D.Mo.1931). At present, the courts of appeals appear to be divided on the issue.

In *United States v. Carmichael*, 489 F.2d 983, 987–90 (7 Cir. 1973) (in banc), the Seventh Circuit Court held that an innocent or merely negligent material[6] misrepresenta-

---

vit, we find it unnecessary to deal with the government's argument on this point.

4. *E. g., McCall v. Maryland,* 9 Md.App. 191, 193 & n. 4, 263 A.2d 19, 22 & n. 4 (1970). *But see Maryland State Bar v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974) (*nolo* plea warrants disciplinary action against attorney); *Wood v. Director,* 8 Md.App. 550, 261 A.2d 495 (1970) (*nolo* plea can be considered for purposes of assigning person to Patuxent Institution).

5. A separate but related question is when a defendant seeking to attack a facially sufficient affidavit may obtain a hearing at which he may attempt to disprove the allegations in the affidavit. Some courts which have adopted a high threshold standard for vitiating a warrant because of an inaccuracy in an affidavit will, on a lesser showing, grant a hearing at which the

defendant may try to adduce evidence to meet that standard. *See, e. g., United States v. Carmichael,* 489 F.2d 983, 988 (7 Cir. 1973) (in banc). This collateral issue does not arise here because even if we assume the affidavit was materially inaccurate and the affiant was negligent in preparing it, Lee has made no allegation that Agent McMonagle acted recklessly or in bad faith. In our view, an allegation of this sort is necessary to warrant a hearing.

6. There is no question that the alleged inaccuracy in the affidavit in this case was material; if Williams had not been convicted of a felony, there was no reason to believe she had committed a crime. Thus, there is no occasion for us to decide under what circumstances a nonmaterial inaccuracy in an affidavit might justify vitiating a search warrant. Two courts which have considered the problem have held that an

tion in an affidavit would not justify suppression of the resulting evidence: "evidence should not be suppressed unless the officer was at least reckless in his misrepresentation." *Id.* at 989. The Eighth Circuit explicitly adopted this standard in *United States v. Marihart,* 492 F.2d 897, 900 (8 Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). The Sixth Circuit has apparently reached a similar conclusion. *See United States v. Bowling,* 351 F.2d 236, 241–42 & n. 2 (6 Cir. 1965), *cert. denied,* 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966).

On the other hand, in *United States v. Upshaw,* 448 F.2d 1218, 1222 (5 Cir. 1971), *cert. denied,* 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972), and *United States v. Morris,* 477 F.2d 657, 662 (5 Cir.), *cert. denied,* 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101 (1973), the Fifth Circuit held that *any* material misstatement in an affidavit will vitiate the warrant and require suppression of the seized evidence; the officer's good faith and carefulness are irrelevant. This is also the view of the Tenth Circuit. *United States v. Harwood,* 470 F.2d 322, 325 (10 Cir. 1972).

A possible middle ground would be to suppress the evidence where the affiant has made a *negligent* material misrepresentation. *See* Kipperman, Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825, 832 (1971). *See also United States v. Belculfine,* 508 F.2d 58, 60–62 (1 Cir. 1974) (discussing issue but finding misrepresentation nonmaterial); *United States v. Gonzalez,* 488 F.2d 833, 837–38 (2 Cir. 1973) (surveying prior Second Circuit cases with inconclusive result, but finding misrepresentation nonmaterial); *United States v. Bolton,* 458 F.2d 377, 378 & n. 6 (9 Cir. 1972) ("general proposition" precludes challenge of fa-

cially sufficient affidavit; "exceptions may exist," citing cases).

■ While this court has never confronted the problem directly, we did state in dictum in *King v. United States,* 282 F.2d 398 (4 Cir. 1960), that "false facts given by the affiant will vitiate the warrant and search," *id.* at 400 n. 4.[7] We are now persuaded, however, that the dictum is overly broad and that the approach adopted by the Seventh and Eighth Circuits is the better view, and is preferable to the expansive rule announced by the Fifth and Tenth Circuits. We believe that excluding probative evidence secured on the basis of a materially inaccurate affidavit, where the inaccuracies were innocent or were the result of simple carelessness, would serve no useful purpose. Only where an officer has committed perjury or has proceeded in reckless disregard of the true facts would we allow an attack on an affidavit sufficient on its face to show probable cause.

## II.

Miss Williams testified at Lee's trial. Her testimony was impeached by the introduction of prior inconsistent statements made by her before the grand jury, and these statements were then admitted as substantive evidence. Lee argues that this was error.

■ Had Federal Rule of Evidence 801(d)(1)(A) been in effect at the time of the trial of this case, that rule would clearly have sanctioned the admission of Williams' grand jury testimony. While the majority view prior to the adoption of Rule 801 was that prior inconsistent statements were not admissible as substantive evidence, *see* McCormick, Evidence § 251 (Cleary ed. 1972), we held in *United States v. Payne,*

immaterial inaccuracy must be made with the intent to deceive in order to justify invalidating the warrant and the search. *United States v. Thomas,* 489 F.2d 664, 669 (5 Cir. 1973); *United States v. Carmichael,* 489 F.2d 983, 989 (7 Cir. 1973).

**7.** *King* was a case in which the sole affidavit to show probable cause was made by an unknown

person who adopted a spurious identity. We held the warrant which was issued thereon invalid. It is at once apparent that the result in *King* would be the same under the rule we now adopt: the resort to spurious identity could not be an innocent or merely negligent misrepresentation.

492 F.2d 449, 451–52 (4 Cir.), *cert. denied,* 419 U.S. 876, 95 S.Ct. 138, 42 L.Ed.2d 115 (1974), that prior statements of a witness carrying "sufficient assurances of reliability" such as "the fact of an oath" ought to be admitted as proof of the facts they contain, and we noted that "even in those jurisdictions following the majority view . . . prior inconsistent statements of a witness available for cross-examination may be received as affirmative proof when they were made . . . before a grand jury," *id.* at 451.[8] We adhere to the view we expressed in *Payne,* and accordingly find no error in the admission of Williams' grand jury testimony in this case.

### III.

Lee was sentenced by the district judge to two years' imprisonment, the maximum term permitted under 18 App.U.S.C. § 1202(a)(1). In arriving at this sentence, the judge specifically relied on three prior incidents in which Lee had been involved with narcotics, which were brought to the court's attention at the sentencing hearing by the government in order to supplement the pre-sentence report.[9] One of these incidents was the subject of a 1969 state court conviction for possession of heroin. The conviction was reversed on appeal because there was not probable cause for Lee's arrest, and thus no basis on which to sustain the search incident to arrest in which the

heroin was discovered. *Carter v. Maryland,* 18 Md.App. 150, 305 A.2d 856 (1973).[10]

Lee argues that the sentencing judge should not have been allowed to consider illegally-seized evidence which could not be admitted at a trial. The government, on the other hand, urges that the exclusionary rule is a judicially-created remedy designed to safeguard fourth amendment rights by deterring official misconduct, and that under *United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), we are required to balance the incremental deterrent effect of applying the exclusionary rule at sentencing against the costs of impairing effective and suitable punishment of proven offenders and unduly complicating sentencing procedures. Not surprisingly, the government strikes the balance on the side of allowing the court to consider the tainted information.

We agree with the government's views. As a general rule, a federal district judge may, before sentencing, "conduct an inquiry broad in scope, largely unlimited either as to kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).[11] There are, of course, constitutional limitations on this rule. In *Tucker,* the Court barred the use at sentencing of convictions obtained without affording the defendant the benefit of counsel. *Tucker;*

---

**8.** The government suggests that *Payne* dealt with admission of hearsay under the "past recollection recorded" exception, rather than as a "prior inconsistent statement." There is language in the opinion about "past recollection recorded" as well as references to "prior inconsistent statements." An inspection of the facts of the case, however, reveals that it dealt with the latter. The witness stated that he had no memory at all of the prior statement. Thus, it clearly was not admitted on the ground that he could vouch for its accuracy and authenticity, as required under the "past recollection recorded" exception. Rather, the theory was that it was "inconsistent" with his testimony in that he claimed not to remember the facts that were the subject of the prior statement. The statement could thus indisputably have been used for impeachment purposes, and we held that it could be admitted as substantive evidence as well, where it carried indicia of reliability at

least as persuasive as the presence of an oath or cross-examination.

**9.** We must therefore deem consideration of each incident to have been material to the sentencing determination, and were we to determine that one incident was improperly considered, we would be required to remand the case for resentencing.

**10.** Defendant Lee and defendant Carter are the same person.

**11.** *See* 18 U.S.C. § 3577:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

*William v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); and *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), recognize a due process right to be sentenced only on information which is accurate. Defendant cannot claim a denial of due process; the fact of his 1969 possession of heroin was judicially established in the earlier prosecution. Although the conviction there was reversed on other grounds, defendant does not dispute the facts there disclosed. *Tucker*'s recognition of the right to counsel is not relevant because, as the Court explained, the absence of counsel impugns the integrity of the fact-finding process so that a conviction obtained in the absence of counsel is unreliable. 404 U.S. at 447 n. 4, 92 S.Ct. 589. Most illegally-obtained evidence, however, is not inherently unreliable; it is excluded at trial on the theory that exclusion will deter the making of illegal searches. In order to decide whether illegally-obtained information must be kept from the eyes of the court, we must therefore evaluate the degree of deterrence which might be promoted by exclusion of such evidence at sentencing and weigh that degree of deterrence against the concomitant limitation of the right of the sentencing judge to impose sentence in the light of all relevant facts. *United States v. Calandra, supra,* 414 U.S. at 349, 94 S.Ct. 613.

We think that if the exclusionary rule were extended to sentencing in the ordinary case, its additional deterrent effect would be so minimal as to be insignificant. Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction—not for the purpose of increasing a sentence in a prosecution already pending or one not yet begun. If they are to be deterred from official lawlessness, it would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little

practical effect to accomplish its main objective.

We apply these considerations to the facts of the instant case. The lawlessness of the searching officers occurred in 1969. The offense of which defendant stands convicted occurred more than four years later. Indeed, the instant offense occurred more than two months after the 1969 lawlessness of the Baltimore City police had brought about reversal of the conviction of the 1969 offense in *Carter v. State,* 18 Md.App. 150, 305 A.2d 856 (1973). Deterrence of the police for their 1969 misconduct, we think, stemmed from the threat of what became an actuality by the 1973 reversal. Were we to adopt defendant's argument, he would not be entitled to acquittal or even a new trial. At most, he would be entitled to be resentenced, and, presumably, he would receive a less severe sentence. While police officers and prosecutors usually consider that they have a stake in obtaining a conviction, they consider that they have little or no interest in the specific punishment to be imposed, especially with respect to crimes not yet committed. The additional deterrent effect in the instant case of the threat that defendant would receive a less severe sentence, or that defendant would be resentenced, would thus assuredly be minimal and insignificant.

Sentencing proceedings could be intolerably delayed and disrupted if it were necessary to determine whether every piece of information to be relied on by the sentencing judge had an ultimate lawful origin. In this case, the legality of the 1969 search had already been litigated; in many instances, hearings would have to be held by the sentencing court to determine the lawfulness of police actions which took place long before. Such procedural complications might, independently of whether information was ultimately determined to be excludable, discourage sentencing judges from relying on such a broad range of information in order to avoid as many fourth amendment challenges as possible. This effect would be an

additional harmful result of extending the exclusionary rule to sentencing proceedings.

The issue of whether evidence obtained in violation of the fourth amendment should be excluded from consideration at sentencing has been the subject of only two decisions by the courts of appeals. In *Verdugo v. United States,* 402 F.2d 599, 609–13 (9 Cir. 1968), *cert. denied,* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), the Ninth Circuit declined to allow the use of tainted evidence under the facts of that case; in *United States v. Schipani,* 435 F.2d 26 (2 Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971), the Second Circuit adopted a contrary position. However, the two cases are factually distinguishable and may be reconciled. In *Verdugo,* the government, knowing that it already possessed sufficient evidence to convict the defendant of selling heroin, illegally searched his home in the hope of locating a larger supply of heroin because "[t]he length of Verdugo's sentence would be quite different if it could be shown that Verdugo was involved in the narcotics traffic on a large scale rather than merely as the seller in a single small transaction." 402 F.2d at 612. The court concluded that in these circumstances, exclusion at trial would be of little significance and the only meaningful deterrent was exclusion at sentencing. In *Schipani,* on the other hand, the illegal wiretap evidence which the government sought to have considered at sentencing had been gathered in the course of the investigation which led to the defendant's conviction. The court reasoned that the government's principal objective in gathering the evidence had been to convict the defendant, so that the fear of exclusion at trial would have been a significant deterrent, and that the further deterrent effect of exclusion at sentencing would have been minimal. *See* 435 F.2d at 28 n. 1.

Our previous decision in *Armpriester v. United States,* 256 F.2d 294 (4 Cir.), *cert.*

*denied,* 358 U.S. 856, 79 S.Ct. 88, 3 L.Ed.2d 90 (1958), is not a bar to the result we reach here. There, we suggested in dictum that a sentence could not be based upon evidence obtained from information elicited from a defendant in violation of the *McNabb-Mallory* rule: "we would not condone the use of evidence obtained in breach of the law, even for the limited purpose of determining the sentence." *Id.* at 256. However, the case held that in fact no additional evidence was obtained as a result of any *McNabb-Mallory* violation, and its broad suggestion that evidence obtained in breach of the law cannot be used even for limited purposes has been eroded by subsequent Supreme Court decisions. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (illegally-obtained evidence may be considered by grand jury); *United States v. Harris,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (illegally-obtained confession may be used for impeachment if voluntary); *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (only defendant who was a victim of search may challenge admission of seized evidence).

In the case at bar, we thus find ourselves in agreement with the Second Circuit's decision in *Schipani* that the disadvantages of applying the exclusionary rule at sentencing are large, the benefits small or non-existent, and that the rule should therefore not be extended. We add that we would be inclined to agree also with the result in *Verdugo,* were we presented with a case where it appeared that the government had illegally seized additional evidence with a view toward enhancing the defendant's sentence; for there, as long as the exclusionary rule persists, its rationale can be served only by excluding illegally-seized evidence from consideration at sentencing.

Since we find no merit in any of the grounds for reversal urged by Lee,[12] the

---

12. In addition to the points we have discussed, Lee also argues (1) that statements he made to a federal officer in a telephone conversation initiated by himself should have been suppressed because the officer did not recite the

*Miranda* warnings; (2) that there was insufficient evidence to prove he had possession of firearms; and (3) that one of the court's jury instructions was prejudicial because it implied his guilt. With respect to (1), we believe that

judgment of the district court is

*AFFIRMED.*

WIDENER, Circuit Judge (concurring):

I concur in Parts I and III of the opinion of the court.

As to Part II, I would not extend *Payne* beyond its facts but recognize the futility of my position and do not dissent.

I especially note that this case was not tried under the Federal Rules of Evidence recently enacted, so the opinion of the court as to that matter is a dictum. There will be time enough to decide the meaning of the Federal Rules when cases arise which have been tried under them.

**UNITED STATES of America ex rel. KANAWHA COAL OPERATORS ASSOCIATION, a corporation, Appellee,**

v.

**Bruce MILLER, Appellant.**

**No. 76–1458.**

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1976.

Decided June 2, 1976.

Allan H. Masinter, Charleston, W. Va. (Lewis, Ciccarello, Masinter & Friedberg, Charleston, W. Va., on brief), for appellant.

Forrest H. Roles, Union, W. Va. (David D. Johnson, Roger A. Wolfe, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for appellee.

*Miranda* warnings need not be given before a noncustodial interrogation; a telephone conversation initiated by the suspect from a place unknown to the officer is certainly noncustodial. With respect to (2) and (3), we have reviewed the record and find no reversible error.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

Bruce Miller appeals from the district court's denial of his motion to vacate a sentence under 28 U.S.C. § 2255. We treat the § 2255 motion as a motion under F.R.C.P. 35 to correct an illegal sentence.

On August 18, 1975, the Kanawha Coal Operators Association (KCOA) sued the United Mine Workers of America, several local unions and ten individuals, including Bruce Miller, to enjoin them from continuation of a work stoppage affecting members of the KCOA. A temporary restraining order was issued on August 21, 1975. On September 4, 1975, KCOA filed a motion alleging that Miller was in violation of the TRO.

Four days later, after a show cause hearing, Miller was held in "civil contempt," fined $500 payable to KCOA, and, unless he sooner purged himself, sentenced to jail for a period not exceeding 179 days. At the time he was so convicted, as indicated, Miller was given the opportunity to purge himself of contempt by promising that he would not violate the court order, and in general would refrain from urging anyone to cease and desist from working in violation of a court order. At that time, Miller declined to purge himself by making the requisite promises.

On September 11, 1975, the court issued a preliminary injunction which by its own terms expired in 15 days. The following day, Miller made the requisite promises to the court, and thus secured his release from jail. The court recited Miller was purged of contempt, but conditioned Miller's release upon his keeping his previously made promises. The court stated to Miller at the time, "That means you can be freed right now, but if you would again get into conduct like I have found that you did engage in, you can be picked back up and be made to serve

the remainder of that time." The order described the remainder of the 179-day sentence as "suspended."

On March 4, 1976, KCOA filed a motion to revoke the suspension of the remainder of Miller's sentence based on Miller's alleged violation of the promises made to the court. On March 11, the district court found Miller to be in violation of the order suspending the sentence, and ordered Miller to serve the remainder of the 179-day sentence (174 days) or until the conclusion of the KCOA case against the UMW, or until further ordered by the court, whichever event first occurred.

Miller's post-judgment motions for relief were denied by the district court.

■■■ Whatever may have been the type of contempt with which Miller was cited, when the district court did not consider Miller's promises to have purged him from contempt, at least from the balance of the jail sentence, it treated its previous order as a conviction for criminal contempt.

■■■ Under 18 U.S.C. § 401, a court may punish criminal contempt by fine or imprisonment, but not both. *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 500 (1943); *United States v. Temple*, 372 F.2d 795 (4th Cir. 1966). Although this court in *Temple* remanded for resentencing when both a fine and probation were imposed for criminal contempt, such remand is inappropriate in this case as Miller has already paid his fine. The district court was without authority to both fine and imprison Miller for a fixed sentence for violation of its previous order.[1] "Since one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint." *Bradley*, 318 U.S. at 52, 63 S.Ct. at 471. Thus, *Bradley* requires the vacation of the jail sentence, the fine having been paid.

Treating Miller's § 2255 motion as one under F.R.C.P. 35, we remand with directions to vacate that portion of Miller's

---

1. A fine and imprisonment for an indefinite term is permissible, of course, for civil contempt.

sentence which imposes imprisonment. Our mandate will issue forthwith.

The judgment of the district court is accordingly

VACATED IN PART and REMANDED.

The DUPLAN CORPORATION et al., Appellants,

v.

DEERING MILLIKEN, INC., et al., Appellees.

No. 75–2049.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided July 13, 1976.

McNeill Smith, Greensboro, N. C., (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., Haynsworth, Perry, Bryant, Marion & Johnstone, Leatherwood, Walker, Todd & Mann, Greenville, S. C., Perrin, Perrin & Mann, Spartanburg, S. C., David Rabin, Greensboro, N. C., Cushman, Darby & Cushman, Washington, D. C., Willkie, Farr & Gallagher, New York City, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., on brief, for appellants.

Jay Greenfield, New York City (Burns, McDonald, Bradford, Erwin & Few, Greenwood, S. C., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Butler Means, Evins & Browne, Spartanburg, S. C., Morgan, Finnegan, Pine, Foley & Lee, New York City, for Chavanoz and DMRC; Brumbaugh, Graves, Donohue & Raymond, New York City, Ward, Howell, Barnes & Long, Spartanburg, S. C., for ARCT on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and HADEN, District Judge.[*]

WIDENER, Circuit Judge:

This is an interlocutory appeal, certified under 28 U.S.C. § 1292(b), from an order of the district court denying pre-trial discovery of certain documents containing the mental impressions, conclusions, opinions and legal theories of the appellees' representatives and attorneys regarding certain prior litigation. This appeal marks the third time in the course of this litigation[1] that we have been presented with questions concerning the applicability of the work product doctrine of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and the scope of Rule 26(b)(3) of the Federal Rules of Civil Procedure.[2]

---

[*] United States District Court for the Northern and Southern Districts of West Virginia, sitting by designation.

1. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1975), cert. den. 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir. 1973).

2. Rule 26(b)(3) FRCP provides:
   Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the dis-

In our most recent *Duplan* opinion dealing with this subject, 509 F.2d 730, we concluded that opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions or legal theories, is immune from discovery under Rule 26(b)(3) where the litigation to which that material relates has since terminated. Accordingly, on remand, discovery was limited to factual materials in the possession of the appellees for which the appellants could establish substantial need. Appellants (the throwsters) now seek access to those documents previously denied them as well as certain additional documents, all of which contain opinion work product of the appellees' attorneys and other representatives.

It is the appellants' position that certain of the documents now sought are not trial preparation material and therefore not protected by the work product doctrine. In addition, they argue that all of the documents involved here, regardless of whether or not they are work product, are discoverable under either a purported "crime, fraud, or tort" exception, or, alternatively, a "subject matter waiver" exception to Rule 26(b)(3). The district court, relying upon our decision in *Duplan v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1974), disagreed, being of opinion that all of the documents sought here were covered by the work product doctrine and that neither of the exceptions contended for were applicable to Rule 26. Since some of the questions presented had not previously been raised during the course of this litigation, but largely because of the sheer immensity of the litigation, we granted this appeal.

We are now of opinion the district court was correct in concluding that the documents to which the appellants now seek access are subject to Rule 26(b)(3). While we do not find it necessary to reach the question of whether there exists a crime, fraud, or tort, exception to work product doctrine, we do find that a subject matter

waiver exception under Rule 26(b)(3) is not applicable to this case. Accordingly, the district court's order denying discovery is affirmed.

The facts of this case have been discussed at some length in our prior decisions on this subject. Briefly stated, this litigation consists of 37 separate patent and antitrust actions which have been consolidated for purposes of trial. The first of these was commenced in 1968 by Moulinage et Retorderie de Chavanoz (Chavanoz), the holder of certain patents on false twist machinery, and Deering Milliken Research Corporation (DMRC), Chavanoz's exclusive use-licensee in the United States, against one of DMRC's sublicensees alleging breach of the patent sublicense and patent infringement. The remaining actions against the appellant-sublicensees were instituted in late 1969 or early 1970 and also asserted breach of the sublicensing agreement and patent infringement.

The sublicensees, all of whom are engaged in texturing, or throwing, synthetic yarns, countered with claims against Chavanoz and DMRC, as well as Ateliers Roannais de Constructions Textiles (ARCT), the manufacturer of the texturing machines embodying, to varying degrees, Chavanoz's patents. The sublicensees (throwsters) asserted that Chavanoz's patents were invalid, unenforceable and not infringed. They also contended that the appellees, along with others, violated the antitrust laws as a result of a settlement agreement entered into in 1964 ending certain patent litigation. Specifically as to this latter allegation, the throwsters asserted that the execution of certain written agreements between the Leesona Corporation, an American manufacturer of false twist machinery, and Chavanoz, DMRC, ARCT and others, was part of a conspiracy to unreasonably restrain trade in violation of the antitrust laws.

Because this purported conspiracy to violate the antitrust laws bears upon the present appeal, it is necessary to briefly

covery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impres-

sions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.