**UNITED STATES of America**

v.

**Frank Stanley HARPER and Darnell Elizabeth Harper.**

**Crim. No. B–76–0345.**

United States District Court, D. Maryland.

July 27, 1976.

---

Joshua R. Treem, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Gerald A. Kroop, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Defendant Frank Stanley Harper was indicted for receiving and possessing firearms which had been transported in commerce after having been convicted of a felony. Darnell Elizabeth Harper, his wife, is charged with aiding and abetting Mr. Harper in the commission of these crimes.

The weapons in question, a 12-gauge shotgun and one Marlin 30-30 caliber rifle, were seized during a search of Harper's Grocery Store which is located in a building rented by Frank Stanley Harper and of which he is the proprietor. The search was conducted pursuant to a warrant issued by a United States Magistrate. Following the search, warrants were issued for the arrest of the defendants. Defendants seek to sup-press the weapons, and also certain statements Frank Harper made to the arresting officers under *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The search warrant was issued upon an affidavit of a Special Agent of the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury (ATF). The agent, after reciting his five years' experience with ATF, averred that a named detective of the Baltimore County Police Department:

> attempted to execute an arrest warrant at Harper's Grocery Store, 915 Harlem Avenue, Baltimore, Maryland. While there he observed one Marlin 30–30 caliber level action rifle, bearing serial number 25042677, on the desk of Frank Stanley Harper, the owner and operator of the store.

After setting forth a basis for believing that the rifle belonged to Frank Harper, the affidavit states:

> On May 20, 1976, a representative of the Criminal Records Section, Maryland State Police, Pikesville, Maryland, stated to your affiant that according to their records, on January 9, 1970, Frank Stanley Harper . . . was found guilty of assault with intent to murder and sentenced to incarceration for a period of three (3) years at the Maryland House of Correction.
>
> On May 20, 1976, a representative of the office of the Clerk of the Court, Criminal Court of Baltimore, Baltimore City, Maryland, stated to your affiant that according to the court dockets, that on January 9, 1970, Frank Stanley Harper was found guilty before Judge Liss of assault with intent to murder and sentenced to three (3) years incarceration at the Maryland House of Correction.

> \*　　\*　　\*　　\*　　\*　　\*

> As a result of my experience as a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, I know that the aforementioned Marlin rifle was manufactured by the Marlin Firearms Company, 100 McKenna Drive, North Haven, Connecticut.

The search warrant was executed on May 24, 1976, and the rifle and twenty rounds of ammunition were recovered. The affidavit in support of the arrest warrant recounts the search and gives further information tying the weapon to Frank Harper. Concerning a prior felony conviction, the agent wrote:

On May 25, 1976, ATF Special Agent Gerard Rudden stated to your affiant that on May 25, 1976, he examined the court dockets of the District Court of Maryland for Baltimore City. According to docket number 1–7, 112150, on July 30, 1975, Frank S. Harper, was found guilty of receiving stolen goods (2 counts), a crime punishable by imprisonment for not more than three (3) years on the first count and a crime punishable by imprisonment for not more than ten (10) years on the second count.

The arrest warrant affidavit also incorporated by reference an attached copy of the search warrant affidavit.

## I. *The Search Warrant*

Defendants contend that the search warrant is invalid for five reasons:

(1) The warrant does not give a basis from which the Magistrate could find that the observation of the rifle by the local police officers was lawful;

(2) The local police officers found the rifle in an area of the store which was not open to the public and therefore exceeded the scope of their authority;

(3) The affiant failed to attach a copy of the Criminal Court for Baltimore docket sheet, thereby depriving the Magistrate of the opportunity to make an independent evaluation of the validity of the assault with intent to murder conviction;

(4) The affiant made a knowingly false statement when he alleged that the defendant had been convicted of assault with intent to murder when in fact that conviction was void;

(5) The affiant gave no basis for his belief that the rifle had been manufactured outside of the State of Maryland.

### 1. *The state arrest warrant*

The local police officer who initially saw the rifle on the premises of the Harper's Grocery Store was attempting to execute an arrest warrant for one Robert Henry Hamlet, an employee of the store. Defendants do not challenge the validity of that warrant or contest the propriety of looking for a suspect at his place of employment. Nor do they challenge the truthfulness of the observations of the police officer or the reliability of his statements. Instead, defendants would require the affiant to attach a copy of the state arrest warrant and the application therefor to the application for the federal warrant and, presumably, detail the conduct of the local police officer in the federal affidavit so that the Magistrate could independently assess the arrest warrant and its execution and decide whether the information had been lawfully obtained while assessing the existence of probable cause for a search warrant.

■ The purpose of the warrant requirement of the Fourth Amendment is the protection of citizens from unmerited invasions of privacy by law enforcement officers, *Johnson v. United States,* 333 U.S. 10, 13–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In discussing the requirements for issuance of a search warrant, the Court has emphasized the presence of *facts* from which the magistrate may find that an invasion of privacy is justified by probable cause to believe that evidence of a crime may be found. *See, e. g., Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Moreover, a trial judge must bear in mind that:

the Fourth Amendment's commands . . . are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are nor-

mally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

▮ Concomitantly, the exclusionary rule does not directly protect privacy, but is designed to deter future police misconduct, *Stone v. Powell,* —— U.S. ——, —— — ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067, (1976). A defendant does not have a right to the exclusion of evidence in all circumstances. Rather, the rule is applied by the courts as a prophylactic measure in those circumstances where its deterrent value is considered significant, *see Stone v. Powell, supra; United States v. Janis,* —— U.S. ——, 96 S.Ct. 3021, 49 L.Ed.2d 1046, (1976) (exclusionary rule does not apply to civil actions); *United States v. Calandra,* 414 U.S. 338, 911 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule does not apply to grand jury proceedings).

Superimposing a requirement that the magistrate independently ferret out all potentially poisonous fruit from a search warrant application would be unduly burdensome and contrary to the common sense which *Ventresca* advises. Once a magistrate finds that information is truthful and reliable and supports probable cause, then the fear of oppressive intrusion founded upon a mere hunch is dissipated. The requirement which defendants urge would not measurably advance legitimate expectations of privacy.

▮ The deterrence value of the requirement would be marginal at best. Evidence obtained during the execution of a warrant which itself is based upon tainted evidence may be suppressed upon motion prior to trial. *United States v. Shaver,* 506 F.2d 699, 700 (4th Cir. 1974). Deterrence, therefore, may be delayed, but it is not denied.

Balanced against this marginal gain in a few instances is the substantial blow defendants' proposal would deal to the efficiency of the warrant process. Deciding whether evidence has been illegally obtained, and further deciding whether the taint of the unconstitutional find has been dissipated, is a difficult process. Asking a magistrate to make this decision would materially delay issuance of a warrant and endanger the success of the investigation.

▮ Of course, a magistrate should not authorize a warrant which he sees is based upon illegally obtained information, but so long as the affidavit contains sufficient information to find probable cause, the warrant may issue.

▮ In short, the affidavit contained facts from which a reasonable and prudent man would conclude that the rifle in question would be found on the premises. The failure of the affiant to attach a copy of the state arrest warrant and the application therefor to his own affidavit did not violate the Fourth Amendment and does not vitiate the instant search.

### 2. Scope of the local police search

▮ At argument, counsel stipulated that the rifle was found on top of a desk situated on a landing up a flight of ten stairs from the main area of the store. The desk was plainly visible from the main area itself, though the rifle on top of the desk was not. Defense counsel argues that under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the police officers had no right to look for the suspect in an area not open to the public, even if the landing was plainly visible from the public area and the suspect was an employee of the store.

*Chimel* itself is inapposite since it dealt with a search into enclosed areas, particularly a dresser drawer, following the arrest of the suspect. Defendants do not contend that the police officers lacked probable cause to believe that the suspect, a store employee, could be found in the store building during working hours, and do not deny

that the rifle was in open, plain view of anyone standing on the landing. Since the officers acted legally in looking through the premises to find the suspect, the rifle was legally observed. *Warden v. Hayden,* 387 U.S. 294, 299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), *aff'g in part,* 363 F.2d 647, 651 (4th Cir. 1966); *United States v. Brown,* 151 U.S.App.D.C. 365, 467 F.2d 419, 423 (1972). *Cf. United States v. Sellers,* 520 F.2d 1281, 1283–1284 (4th Cir. 1975).

### 3. *Attachment of a docket sheet to the affidavit*

■ Defendants urge the court to find the warrant invalid because the affiant failed to attach a copy of the complete official docket sheets for Harper's assault with intent to murder charge, which docket sheets would have revealed that following post-conviction proceedings the charge was nolle prossed. The argument is untenable. The affiant obtained his information from the state police records, a reliable source, and confirmed the information by telephone with the Clerk of the Criminal Court for Baltimore. Though this case was exceptional, further effort in the usual case would have been fruitless.

### 4. *Factual inaccuracies in the affidavit*

The affidavit alleges that Frank Harper was convicted of assault with intent to murder. The docket sheet submitted by counsel shows the entry of a judgment of guilt, and at the bottom of the docket is the notation "February 4, 1970—See Post Conviction Docket—Pet. No. 1899." The Post Conviction docket contains a December 23, 1970 order releasing Harper from the Patuxent Institution for disposition by juvenile authorities. Harper was reindicted for the same crime in 1971, and the docket sheet for Indictment No. 1189, January Term, 1971 states that juvenile authorities waived jurisdiction but thereafter a "Stet entered by State by Order of Court." The final disposition was apparently the fallout of *Long v. Robinson,* 316 F.Supp. 22 (D.Md. 1970), *aff'd,* 436 F.2d 1116 (4th Cir. 1971).

■ Defendants recognize "that in the absence of intentional or reckless falsity by the affiant, a defendant is precluded from challenging, by way of a motion to suppress evidence, an affidavit sufficient on its face to establish probable cause. . . . " *United States v. Lee,* 540 F.2d 1205 at 1207 (4th Cir. 1976). Defendants argue that the affiant's failure to personally search the docket sheets and then correctly interpret the puzzle amounts to "reckless disregard of the true facts," *United States v. Lee, supra,* at 1209. The facts of *Lee* itself preclude such a claim.

### 5. *Interstate commerce*

At the conclusion of the affidavit, the agent stated, on the basis of his experience, that the rifle had been manufactured in Connecticut. Defendants submit that in accepting this assertion, the magistrate erred.

■ The affidavit gave the name of the manufacturer of the weapon, the type of weapon, and its serial number. The place of manufacture is a fact which is

> subject to quick and certain verification [and] is unlikely to be falsified. The police are not required to track the details of how they became acquainted with widely known facts.

*United States v. Patterson,* 161 U.S.App. D.C. 281, 495 F.2d 107, 111 n.5 (1974). *See also United States v. Shipstead,* 433 F.2d 368, 372 (9th Cir. 1970). The magistrate may also accept the opinion of an expert as to the composition or source of an object in deciding upon probable cause, *United States v. Welebir,* 498 F.2d 346, 349 (4th Cir. 1974). Given that the determination to be made is probable cause rather than proof beyond a reasonable doubt, a magistrate may accept the opinion of a highly experienced agent of the Bureau of Alcohol, Tobacco and Firearms as to the origin of a specifically identified, brand-name weapon.

## II. *The Arrest Warrant*

Harper's first challenge to the arrest warrant is to argue that the complaint for his arrest is the fruit of the seizure of the

rifle. Since the court finds that seizure lawful, the contention is unavailing.

Secondly, Harper again states that the affidavit contained a knowingly false statement. In between the time of the search warrant and the complaint, the agent had been called by Harper's counsel who informed the agent that the assault with intent to murder conviction had been vitiated. The complaint incorporates the search warrant affidavit by reference and adds:

On May 25, 1976, ATF Special Agent Gerard Rudden stated to your affiant that on May 25, 1976, he examined the court dockets of the District Court of Maryland, for Baltimore City. According to docket number 1–7, 112150, on July 30, 1975, Frank S. Harper, was found guilty of receiving stolen goods (2 counts), a crime punishable by imprisonment for not more than three (3) years on the first count and a crime punishable by imprisonment for not more than ten (10) years on the second count.

It is agreed by both counsel that the receiving charges are probably misdemeanors rather than felonies, defense counsel asserting that they are in fact misdemeanors. The docket sheets do not clearly indicate that the defendant was charged with misdemeanors under *Annotated Code of Maryland,* Art. 27, § 467 or felonies under Art. 27, § 466. Both complaints as filled out by the charging police officer recite Article 27, § 467 as the statute violated, but the second complaint alleges receipt of goods of a value in excess of $100, which would fall under § 466.

A further complication is the fact that Harper was arrested and charged on June 4, 1975. Section 467 was amended, effective July 1, 1975, to reduce the penalty from three years to 18 months.

Though the affiant was available for testimony, the defendants made no effort to probe his motives directly. Instead they argue that the error was so egregious that the court should infer either an intent to deceive the magistrate or reckless disregard for the truth. The court fails to see how such an inference could be drawn from this welter of confusion.

Accordingly, it is this 27th day of July, 1976, ORDERED:

That the defendants' motions to suppress BE, and the same ARE hereby, DENIED.