PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

JAMES DAVID NICHOLS,
  *Defendant-Appellee.*

No. 04-5020

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JAMES DAVID NICHOLS,
  *Defendant-Appellant.*

No. 04-5021

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-03-54-MU)

Argued: October 28, 2005

Decided: February 28, 2006

Before WILKINS, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Wilkins
wrote the opinion, in which Judge Michael and Judge Traxler joined.

**COUNSEL**

**ARGUED:** Matthew Theodore Martens, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellant/Cross-Appellee. Randolph Marshall Lee, Charlotte, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellant/Cross-Appellee.

**OPINION**

WILKINS, Chief Judge:

The United States appeals James David Nichols' sentence for bank robbery, *see* 18 U.S.C.A. § 2113(a) (West 2000), arguing that the district court improperly refused to consider at sentencing a statement obtained from Nichols in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981). Because the Fifth Amendment does not prohibit the district court from considering this statement at sentencing, we vacate Nichols' sentence and remand for resentencing.[1]

I.

On March 13, 2003, Nichols entered a branch of First Citizens Bank in Charlotte, North Carolina, and handed a bank teller a note stating, "This is A Robbery Give up the money or I shoot." J.A. 355. The teller gave Nichols approximately $5,000. Shortly after the bank robbery, Nichols' father telephoned authorities to report that his son may have committed the robbery. A few days later, Detective James

---

[1]On cross-appeal, Nichols argues that the district court violated the Sixth Amendment by applying a sentencing enhancement based on judge-found facts and by treating the sentencing guidelines as mandatory. *See United States v. Booker*, 125 S. Ct. 738, 757, 769 (2005). Because we are remanding for resentencing on other grounds, we need not consider Nichols' *Booker* claims; on remand, the district court should resentence Nichols in accordance with *Booker*. *See United States v. Hughes*, 401 F.3d 540, 546-47 (4th Cir. 2005).

Michael Sanders of the Charlotte-Mecklenburg Police Department telephoned Nichols, who was then with his father, to arrange for Nichols to surrender to police. According to Nichols and his father, during this conversation Nichols informed Detective Sanders that he wanted an attorney, and Sanders assured Nichols he would receive one. Nichols and his father then met Detective Sanders at an agreed-upon location, and Nichols voluntarily returned what was left of the money obtained in the bank robbery. According to Nichols and his father, Nichols again informed Detective Sanders that he wanted an attorney, and Sanders again responded that Nichols would receive one.

Nichols was then taken into custody and transported to the police station. Although Nichols did not initiate further contact with police, Detective Sanders took Nichols to an interview room and reviewed with him an "Adult Waiver of Rights" form, *id.* at 94, which Nichols initialed in several places and signed at the bottom. In particular, Nichols initialed statements acknowledging that he had the rights to consult with an attorney, to have an attorney present during questioning, and to stop answering questions until he spoke with an attorney. Nichols also circled, initialed, and signed a portion of the form indicating that he voluntarily agreed to answer questions without an attorney present. Detective Sanders then interviewed Nichols, who confessed to robbing the bank and to carrying a .45-caliber pistol in his pants pocket during the robbery.

Nichols was indicted by a federal grand jury on charges of bank robbery, *see* 18 U.S.C.A. § 2113(a); armed bank robbery, *see* 18 U.S.C.A. § 2113(d) (West 2000); and using or carrying a firearm during and in relation to a crime of violence, *see* 18 U.S.C.A. § 924(c)(1)(A) (West Supp. 2005). Nichols moved to suppress his confession—specifically, his admission to carrying a firearm during the robbery. He claimed that before he made any statements to police, he had requested an attorney and had been assured—despite his signing of the "Adult Waiver of Rights" form—that counsel would be made available to him. Thus, Nichols argued that the statements he gave in response to police questioning after he requested counsel were inadmissible. *See Edwards*, 451 U.S. at 484-85; *Miranda*, 384 U.S. at 474-76.

A magistrate judge conducted a hearing on Nichols' suppression motion. Nichols and his father testified (as described above) that Nichols twice requested counsel before his confession. Detective Sanders, however, testified that Nichols never requested an attorney prior to questioning. Noting that the resolution of Nichols' motion "comes down to a single factual question: namely, whether [Nichols] asked for an attorney before he was interrogated," J.A. 76, the magistrate judge found that the testimony of Nichols and his father "credibly establishes that an attorney *was* requested not once but twice," *id.* at 80. Because Nichols did not initiate the further communications with police after requesting an attorney, the magistrate judge recommended that Nichols' confession be suppressed.

The Government filed objections to the magistrate judge's recommended decision, arguing primarily that Nichols had not, in fact, requested counsel before police questioned him. Following a hearing, the district court adopted the findings and conclusions of the magistrate judge, including the finding that Nichols twice requested an attorney. The district court therefore granted Nichols' motion to suppress. Due to the suppression of Nichols' statement that he carried a firearm during the robbery—the only direct evidence that a firearm was present—the Government dismissed the armed bank robbery and firearm charges.

Nichols pleaded guilty to the bank robbery charge. In the presentence report (PSR), the probation officer did not recommend an enhancement for possession of a firearm during the robbery, *see U.S. Sentencing Guidelines Manual* § 2B3.1(b)(2)(C) (2004). The Government objected to this omission, arguing that Nichols had admitted to possessing a firearm during the robbery and that this statement, though suppressed for purposes of conviction, could be considered at sentencing. The probation officer rejected the Government's argument, stating that because "one of [Nichols'] fundamental rights under the United States Constitution was violated in securing this statement," enhancing Nichols' sentence based on that statement "would only compound the violation." J.A. 375. At sentencing, the district court adopted the probation officer's recommendation not to apply a firearm enhancement. The district court sentenced Nichols to 46 months imprisonment.

## II.

The Government contends that the district court erroneously excluded from consideration at sentencing Nichols' statement that he possessed a firearm during the robbery. The Government argues that although this statement is inadmissible for purposes of conviction, there is no constitutional impediment to considering the statement in determining Nichols' sentence. We review this legal issue de novo. *See United States v. Acosta*, 303 F.3d 78, 84 (1st Cir. 2002).

District courts traditionally have been "given wide latitude as to the information they may consider in passing sentence after a conviction." *United States v. Howard-Arias*, 679 F.2d 363, 367 (4th Cir. 1982); *see United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."); *Williams v. New York*, 337 U.S. 241, 246 (1949) (explaining that courts have traditionally "exercise[d] a wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law"); *see also Nichols v. United States*, 511 U.S. 738, 747 (1994) (noting that "the sentencing process . . . [is] less exacting than the process of establishing guilt"). That is because it is "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence" for the sentencing court to "possess[ ] . . . the fullest information possible concerning the defendant's life and characteristics." *Williams*, 337 U.S. at 247.

This broad discretion has been preserved under the sentencing guidelines. In resolving any dispute concerning a factor pertinent to the sentencing decision, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a), p.s. And, in selecting a particular sentence within the guideline range (or deciding whether to depart from that range), a district court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." *Id.* § 1B1.4; *see* 18 U.S.C.A. § 3661 (West 2000) ("No limi-

tation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Nevertheless, we have recognized that "[t]here are . . . constitutional limitations" on the generally broad scope of information a court may consider at sentencing. *United States v. Lee*, 540 F.2d 1205, 1210 (4th Cir. 1976). In particular, we have construed various Supreme Court decisions as "recogniz[ing] a due process right to be sentenced only on information which is accurate." *Id.* at 1211. For example, in *Tucker*, the Supreme Court held that it was improper for a sentencing court to consider a defendant's prior felony convictions that had been obtained without affording the defendant the right to counsel. *See Tucker*, 404 U.S. at 447-49. The Court emphasized that the sentence was "founded at least in part upon misinformation of constitutional magnitude," in that the defendant "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* at 447 (internal quotation marks omitted); *see Lee*, 540 F.2d at 1211 ("[A]s the Court explained [in *Tucker*], the absence of counsel impugns the integrity of the fact-finding process so that a conviction obtained in the absence of counsel is unreliable.").

In *Lee*, however, we held that "reliable but illegally- obtained evidence may generally be considered" at sentencing. *Lee*, 540 F.2d at 1207. There, the defendant (Lee) was convicted of illegally possessing a firearm. *See id.* In determining Lee's sentence, the district court considered a prior state court conviction for narcotics possession; that conviction, however, had been reversed on appeal because law enforcement officers had lacked probable cause to arrest Lee, rendering the subsequent search that yielded the narcotics invalid. *See id.* at 1210. In rejecting Lee's argument that the district court should not have considered the conviction, we recognized that "[m]ost illegally-obtained evidence . . . is not inherently unreliable; it is excluded at trial on the theory that exclusion will deter the making of illegal searches." *Id.* at 1211. We therefore explained that to determine whether illegally obtained evidence must be excluded at sentencing, the court must "evaluate the degree of deterrence which might be promoted by exclusion of such evidence . . . and weigh that degree of deterrence against the concomitant limitation of the right of the sen-

tencing judge to impose sentence in the light of all relevant facts." *Id.* (citing *United States v. Calandra*, 414 U.S. 338, 349 (1974)).[2] We noted that in most cases the additional deterrent effect of excluding from sentencing illegally obtained evidence already inadmissible for purposes of conviction "would be so minimal as to be insignificant." *Id.*

We thus concluded in *Lee* that "the disadvantages of applying the exclusionary rule at sentencing are large, the benefits small or non-existent, and . . . the rule should therefore not be extended." *Id.* at 1212. We noted, however, that we might reach the opposite conclusion if "it appeared that the government had illegally seized additional evidence with a view toward enhancing the defendant's sentence; for there, as long as the exclusionary rule persists, its rationale can be served only by excluding illegally-seized evidence from consideration at sentencing." *Id.*

Although *Lee* was a pre-guidelines decision, every other circuit has concluded that courts imposing sentences under the guidelines may generally consider evidence obtained in violation of the Fourth Amendment. *See Acosta*, 303 F.3d at 84-86 (collecting cases and reaching same conclusion).[3] These courts have relied largely on the same reasoning we articulated in *Lee*—namely, that "the deterrent effect of the exclusionary rule does not outweigh the detrimental effects of excluding reliable evidence on the court's ability to meet its goal of proper sentencing." *Acosta*, 303 F.3d at 85. These courts have further "recognized that the sentencing court needs to have the fullest information available to fashion an appropriate remedy and that the Sentencing Guidelines allow the sentencing court to consider" a broad range of information concerning the defendant. *Id.*

---

[2]*Calandra* relied on a similar balancing test in holding that the Fourth Amendment does not prohibit consideration, during grand jury proceedings, of testimony concerning illegally seized evidence. *See Calandra*, 414 U.S. at 349-52.

[3]As in *Lee*, most of these courts have suggested that illegally seized evidence might be excluded from consideration at sentencing "if there is an indication that the police violated the defendant's Fourth Amendment rights with the intent to secure an increased sentence." *Acosta*, 303 F.3d at 85 (citing cases).

Here, the Government argues that we should extend the reasoning of *Lee* to permit consideration at sentencing of a statement obtained in violation of *Miranda* and *Edwards*. In *Miranda*, the Supreme Court held that to protect the Fifth Amendment privilege against compelled self-incrimination,[4] a criminal suspect must be advised before custodial interrogation that, *inter alia*, he has the right to the presence of an attorney during questioning. *See Miranda*, 384 U.S. at 478-79. If the suspect requests counsel, "the interrogation must cease until an attorney is present." *Id.* at 474. In *Edwards*, the Supreme Court "reconfirm[ed]" the *Miranda* principles regarding the right to counsel during custodial interrogation and held that once a suspect invokes that right, police may not interrogate the suspect further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. Any statements obtained by police in violation of *Miranda* and *Edwards*—including statements that would otherwise be considered voluntary—are presumed involuntary and are inadmissible in the government's case-in-chief at trial. *See Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *see also McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

Only one federal appellate court, the Seventh Circuit, has specifically addressed whether statements obtained by police in violation of *Miranda* are admissible at sentencing. *See Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1388 (7th Cir. 1994) (en banc). In *Del Vecchio*, a state habeas petitioner challenged the admission, at the sentencing phase of his capital murder trial, of a 14-year-old confession to an earlier murder that he claimed was obtained in violation of *Miranda*. *See id.* The Seventh Circuit rejected this argument, holding that even if a *Miranda* violation were established, "that violation would not require exclusion of the confession during the sentencing proceedings" because "[t]he exclusionary rule is generally inapplicable during sentencing." *Id.* (citing Fourth Amendment cases); *see also id.* (explaining that "evidence which might be inadmissible at the guilt phase of a trial can be admitted at the sentencing phase, as long as the evidence is reliable"). The court further observed that "there was really no deterrent effect in applying the [exclusionary] rule; any

---

[4]*See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . .").

police misconduct would have occurred fourteen years before the confession was introduced." *Id.*

We agree with the Seventh Circuit that statements obtained in violation of *Miranda*, if they are otherwise voluntary, may generally be considered at sentencing. The Supreme Court has repeatedly held that although statements obtained in violation of *Miranda* are inadmissible in the government's case-in-chief at trial, such statements, if reliable, may be used for other purposes and in other ways. *See, e.g.*, *Elstad*, 470 U.S. at 307 ("[T]he *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted."). For example, the Court has held that in the absence of actual coercion, statements obtained without warning a defendant of his right to counsel under *Miranda* may be used to impeach the defendant's testimony at trial. *See Harris v. New York*, 401 U.S. 222, 224-26 (1971). The Court has similarly upheld the introduction, for impeachment purposes, of otherwise voluntary statements obtained after a suspect had invoked his *Miranda* right to counsel but before counsel was provided. *See Oregon v. Hass*, 420 U.S. 714, 722-24 (1975). Further, the Court has held that the Fifth Amendment does not bar the admission at trial of the testimony of witnesses discovered through a defendant's unwarned but otherwise voluntary statements, *see Michigan v. Tucker*, 417 U.S. 433, 446-52 (1974), nor does it bar the introduction of physical evidence discovered as a result of such statements, *see United States v. Patane*, 124 S. Ct. 2620, 2626 (2004) (plurality opinion); *id.* at 2631 (Kennedy, J., concurring in the judgment). Moreover, the Court has held that when a defendant makes unwarned but otherwise voluntary statements, the Fifth Amendment normally does not require suppression of subsequent statements made after *Miranda* warnings are given. *See Elstad*, 470 U.S. at 318.

These decisions have relied on the same rationale as cases permitting the consideration of illegally seized evidence at sentencing—namely, a balancing of the deterrent effect expected to be achieved by extending the *Miranda* exclusionary rule against the harm resulting from the exclusion of reliable evidence from the truth-finding process. *See id.* at 308 ("[T]he absence of any coercion or improper tactics undercuts the twin rationales—trustworthiness and deterrence—for a broader rule."); *Hass*, 420 U.S. at 722 (explaining that voluntary

statements to be used for impeachment "would provide valuable aid to the jury in assessing the defendant's credibility" and that "there is sufficient deterrence when the evidence in question is made unavailable to the prosecution in its case in chief"); *Harris*, 401 U.S. at 225 (similar); *Tucker*, 417 U.S. at 447-50 (holding that neither deterrence nor trustworthiness rationales of Fifth Amendment exclusionary rule supported exclusion of evidence at issue; emphasizing the need to "weigh the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence"); *see also Missouri v. Seibert*, 124 S. Ct. 2601, 2614 (2004) (Kennedy, J., concurring in the judgment) ("Evidence [obtained in violation of *Miranda*] is admissible when the central concerns of *Miranda* are not likely to be implicated and when other objectives of the criminal justice system are best served by its introduction."); *United States v. Havens*, 446 U.S. 620, 627 (1980) (indicating that similar policies underlie Fourth and Fifth Amendment exclusionary rules).

Applying these principles here, we conclude that the policies underlying the *Miranda* exclusionary rule normally will not justify the exclusion of illegally obtained but reliable evidence from a sentencing proceeding. We believe that in most cases, the exclusion of evidence obtained in violation of *Miranda* from the government's case-in-chief at trial will provide ample deterrence against police misconduct. *See Hass*, 420 U.S. at 722; *Harris*, 401 U.S. at 225; *cf. Lee*, 540 F.2d at 1211. For example, as a result of the *Miranda-Edwards* violations here, the Government was required to dismiss two of the three charges against Nichols—including a firearm charge that carried a mandatory minimum sentence of five years imprisonment, required to be served consecutively to any other sentence, *see* 18 U.S.C.A. § 924(c)(1)(A)(i), (D)(ii) (West 2000). As we recognized in *Lee*, and as other circuits have noted, the additional deterrent effect of excluding illegally obtained evidence from sentencing usually would be minimal. *See Lee*, 540 F.2d at 1211; *Acosta*, 303 F.3d at 85; *cf. Hass*, 420 U.S. at 723 (characterizing as "speculative" the possibility that police may continue to question a suspect despite his request for counsel in order to obtain evidence for impeachment).[5]

---

[5]As in *Lee*, however, we note that illegally obtained evidence might be subject to exclusion if there were some indication that the government obtained that evidence for the purpose of enhancing the defendant's sentence. *See Lee*, 540 F.2d at 1212. There is no such indication here.

In addition, absent coercive tactics by police, there is nothing inherently unreliable about otherwise voluntary statements obtained in violation of *Miranda* and *Edwards*. *See, e.g.*, *Hass*, 420 U.S. at 722-23 (finding, in case in which police failed to honor defendant's request for counsel, no indication that defendant's subsequent statements were involuntary or coerced); *see also Dickerson v. United States*, 530 U.S. 428, 433-34 (2000) (discussing traditional standards for determining whether a confession was involuntary). Here, for instance, there is no claim that Nichols' confession—though obtained improperly after he requested counsel—was coerced or otherwise involuntary, nor could the record support such a claim. Nichols described his questioning, which lasted approximately four hours, as being conversational. During the interview, Nichols was not handcuffed or otherwise physically restrained. The door to Nichols' interview room was open, and he was allowed to smoke. Further, Nichols testified that he spoke with police because he believed it would benefit him to cooperate. During the telephone conversation with Nichols before his surrender, Detective Sanders indicated that if Nichols turned himself in, it would benefit him in connection with other state charges. At no time, however, did Detective Sanders make any specific promises or inducements in exchange for Nichols answering questions. *See United States v. Mashburn*, 406 F.3d 303, 309-10 (4th Cir. 2005).

By contrast, the exclusion of reliable evidence hampers the ability of sentencing courts to consider all relevant information about the defendant in selecting an appropriate sentence. *See Lee*, 540 F.2d at 1211-12; *Acosta*, 303 F.3d at 85. Here, for example, the exclusion of Nichols' confession at sentencing prevented the district court from taking into account a significant aggravating factor in the bank robbery—Nichols' possession of a firearm.

In sum, we conclude that in cases such as this one—where there is no evidence that an illegally obtained statement was actually coerced or otherwise involuntary—the substantial burden on the sentencing process resulting from exclusion of that statement outweighs any countervailing concerns about police deterrence or unreliable evidence. As with evidence obtained in violation of the Fourth Amendment, "the disadvantages of applying the [*Miranda*] exclusionary rule at sentencing are large, [and] the benefits small or non-existent." *Lee*,

540 F.2d at 1212. We therefore conclude that in most cases, including this one, a district court may consider at sentencing statements obtained in violation of *Miranda* and *Edwards*.[6]

---

[6]Nichols relies on *Estelle v. Smith*, 451 U.S. 454 (1981), in which the Supreme Court held that the admission, during the penalty phase of a capital murder trial, of statements obtained from the defendant in a court-ordered psychiatric examination violated the Fifth Amendment because the defendant was not warned, prior to the examination, that he had the right to remain silent and that any statements could be used against him at sentencing. *See Estelle*, 451 U.S. at 467-69. However, the Supreme Court has limited *Estelle*'s Fifth Amendment holding to the "distinct circumstances" of that capital case and has "never extended [that] holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (internal quotation marks omitted). We recognize that in *Mitchell v. United States*, 526 U.S. 314 (1999)—also cited by Nichols—the Supreme Court relied on certain language from *Estelle* in holding that the privilege against self-incrimination applies during sentencing proceedings, even in non-capital cases. *See Mitchell*, 526 U.S. at 325-27. But, while *Mitchell* recognized the core principle that a defendant cannot be compelled to incriminate himself at sentencing, that case did not address whether the *Miranda-Edwards* exclusionary rule should be extended to preclude the introduction at sentencing of voluntary (though illegally obtained) prior statements. *See Patane*, 124 S. Ct. at 2627 (plurality opinion) (emphasizing that "any further extension" of *Miranda* and other rules protecting the privilege against self-incrimination "must be justified by its necessity for the protection of the actual right against compelled self-incrimination").

Nor does our decision in *Mashburn* compel a different result. Although *Mashburn* involved a defendant's claim that the consideration at sentencing of certain statements he made in response to police questioning violated his *Miranda* rights, *see Mashburn*, 406 F.3d at 305, we were not called upon there to decide whether the *Miranda* exclusionary rule applied to sentencing proceedings, as neither party contested that issue, *see id.* at 306 (noting that "the parties agree that [Mashburn's] initial [unwarned] statements are irrebuttably presumed involuntary," and proceeding to consider whether subsequent warned statements should also be presumed involuntary).

## III.

For the reasons set forth above, we conclude that the district court erroneously excluded from consideration at sentencing Nichols' statement that he carried a firearm during the robbery. We thus vacate Nichols' sentence and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED*