[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10302
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00159-SCJ-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUINTON JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 16, 2017)

Before MARCUS, FAY, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a jury trial, Defendant Quinton Jackson appeals his conviction for being a felon in possession of a firearm and 262-month sentence. On appeal, Defendant argues that the district court erred by denying his motion to suppress because officers did not have probable cause to conduct a traffic stop based on his tag light violation. He also argues that the district court erred by admitting a post-arrest statement, made in violation of *Miranda*[1], at the sentencing hearing. After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

Atlanta Police Department Officers Kevin Romer, Caleb Munson, and Darryl Moore were assigned to the crime-suppression unit—a unit that acts proactively to stop crime before it is committed. On August 22, 2014, they were patrolling "the Boulevard Area," an area known for high crime, population density, narcotics, and violence. During their patrol that night, the officers stopped a vehicle driven by Defendant because the vehicle did not have tag lights, which are lights that illuminate the license plate so that it can be seen at night.

Officers Romer and Moore approached the vehicle from the passenger side, and Officer Munson approached on the driver's side. As the officers approached, Officer Moore observed Defendant reaching under the driver's seat.

---

[1]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

Defendant had opened the driver's side window approximately three or four inches and the officers repeatedly asked him to roll the window down more, but he would not comply. Officer Romer could smell marijuana emanating from the vehicle. In the meantime, Officer Munson could see Defendant moving around a lot and observed that he was shaking and breathing heavily. Based on Defendant's movements, Officer Munson opened the door. As he did, Defendant reached down to the driver's side floorboard. Officer Munson stopped Defendant, pulled him out of the vehicle, and placed him in handcuffs.

Officer Moore asked Defendant if he had anything illegal in the vehicle and Defendant stated that he had a firearm and that there was something inside of the Gucci bag. Once inside a patrol car, Defendant also told Officer Moore that he was reaching for the gun because he did not want to go back to jail. Officer Moore then read Defendant his *Miranda* rights. After being advised of his rights, Defendant told Officer Moore that he sold drugs to support his family.

Officers subsequently learned that Defendant had an active warrant for his arrest. Officer Munson recovered a firearm—later determined to be stolen—from the vehicle in the location where Defendant was reaching. Officers also found a Gucci bag containing heroin and crack cocaine.

### B.    Procedural History

A federal grand jury charged Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Defendant moved to suppress the statements and evidence recovered by officers during the traffic stop. As to the statements, Defendant argued that it was not clear whether he knowingly and voluntarily waived his rights under *Miranda*.  He also argued that the evidence found during the vehicle stop should be suppressed because officers lacked probable cause to stop, arrest, and search Defendant's vehicle.

At the suppression hearing, Officers Romer, Munson, and Moore provided testimony regarding the details of the traffic stop.  Following the parties' submissions of post-hearing briefs, the magistrate judge issued a report and recommendation ("R&R"), recommending that the district court deny Defendant's motions to suppress.  Concluding that the officers testified credibly, the magistrate judge determined that the officers had probable cause to stop the vehicle based on the tag light violation.  Moreover, based on the officers' training and experience, as well as the circumstances surrounding the vehicle stop, the magistrate judge concluded that the officers had probable cause to arrest Defendant and search the vehicle.  As to the Defendant's post-arrest statements, the magistrate judge determined that the statements Defendant made prior to receiving *Miranda* warnings were made voluntarily and could contribute to the finding of probable

4

cause to search the vehicle.  Finally, the magistrate judge determined that Defendant's post-*Miranda* statements were admissible because he knowingly and voluntarily waived his *Miranda* rights.

Over Defendant's objections, the district court adopted the R&R and denied Defendant's motions to suppress.  Defendant proceeded to trial and the jury returned a guilty verdict against him.

At the sentencing hearing, the district court calculated a guideline range of 262 to 327 months' imprisonment based on an offense level of 34 and a criminal history category of VI.  The Government then called Officer Moore to testify about one of Defendant's post-arrest statements.  Defendant objected to this line of questioning, arguing that his statement was obtained in violation of *Miranda* and was excluded at trial.[2]  The Government responded that the district court could consider Defendant's statement at sentencing if it found that the statement was voluntary and reliable.  The district court permitted Officer Moore to testify about the circumstances surrounding Defendant's statement, so that it could determine whether the statement had sufficient indicia of reliability.

Officer Moore then testified that Defendant was handcuffed and in the patrol vehicle when he questioned him.  He used a calm voice while speaking to Defendant and none of the officers ever drew their weapons.  Officer Moore

---

[2]  The Government acknowledged during the suppression proceedings that it would not use the pre-*Miranda* statements in its case-in-chief.

acknowledged on cross-examination that all three officers were dressed in uniforms and were carrying guns and badges.  When asked by the court, Officer Moore stated that the question that he had asked Defendant was "Hey, man, you were really reaching for that gun?"

Based on Officer Moore's testimony, the district court determined that Defendant's statement was reliable, relevant, not coerced, and was therefore admissible.  Officer Moore then explained that in response to his question, Defendant said, "I didn't want to go back to jail, officer."  Officer Moore interpreted Defendant's statement to mean that he would have harmed the officers in order to avoid going to jail.

Defendant requested a sentence of 180 months.[3]  The district court sentenced him to 262 months' imprisonment and this appeal followed.

## II.    DISCUSSION

### A.    Motion to Suppress

Defendant argues that the district court erred by denying his motion to suppress because Officers Moore, Munson, and Romer lacked probable cause to believe that he had committed a traffic violation.  Specifically, he argues that driving with inoperable tag lights is insufficient to establish a violation under

---

[3]  Defendant was subject to a 15-year mandatory minimum sentence under the Armed Career Criminal Act.

6

O.C.G.A. § 40-8-23(d), as the evidence must also show that his license plate was not clearly legible from 50 feet away.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012) (quotations omitted). We defer to the district court's credibility determinations unless the court's understanding of the facts appears to be unbelievable. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

The Fourth Amendment protects an individual against unreasonable searches and seizures. U.S. CONST. amend. IV. A traffic stop is a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). However, a traffic stop is constitutional if a police officer has probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) ("A traffic stop, however, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion" that that the subject is involved in or is about to be involved in criminal activity). This standard is met when an officer observes a traffic violation. *Harris*, 526 F.3d at 1338 (concluding that an

7

officer had probable cause to stop a vehicle after observing that it failed to use a turn signal when changing lanes).

The Government asserts that Defendant waived his right to challenge the initial stop because he never raised the issue before the district court and failed to object to the magistrate judge's finding that the officers had probable cause to stop Defendant based on a tag light violation. We agree.

Federal Rule of Criminal Procedure 59(b)(2) provides that a party must file specific written objections to the magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommendations. Fed. R. Crim. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." *Id.*; 11th Cir. R. 3-1 (stating that a party who is informed of the time period for filing objections to the magistrate judge's report and recommendations and fails to do so waives the right to challenge the district court's order based on unobjected-to factual and legal conclusions). We have held that a defendant who fails to object to a specific portion of the magistrate judge's report and recommendation waives the right to challenge the district court's order as to that portion. *United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015). Nevertheless, "if necessary in the interests of justice," we may exercise our discretion and review an otherwise waived argument for plain error. *See* 11th Cir. R. 3-1.

8

Although Defendant did not challenge the constitutionality of the initial stop in his post-suppression hearing brief,[4] the magistrate judge concluded that the officers had probable cause to stop Defendant's vehicle based on their observation that he violated O.C.G.A. § 40-8-23(d) because he had inoperable tag lights.  The magistrate judge warned Defendant that he had 14 days to file any written objections to the R&R and that he would waive his right to review if he failed to file objections.  Despite this warning, Defendant did not object to this specific finding.  To be clear, Defendant objected to several of the magistrate judge's findings—including the finding that the officers testified credibly and that there was probable cause to arrest Defendant and search his car—but he never argued that the officers lacked probable cause for the initial stop, much less that there was insufficient evidence to establish a violation of § 40-8-23(d) because the officers' testimony failed to show that his license plate was not clearly legible from 50 feet away.

Contrary to Defendant's contention, his objection challenging the magistrate judge's finding regarding the probable cause supporting the arrest did not put the district court on notice of any objection to the magistrate judge's finding that the officers had probable cause for the initial stop.  As reflected in the R&R, the initial

---

[4] It is also worth noting that Defendant never argued at any point before the district court that probable cause was lacking for the initial stop because there was insufficient evidence showing that he violated O.C.G.A. § 40-8-23(d).  In fact, in his objections to the R&R, Defendant stated that, at the time of his arrest, he "had only violated a traffic ordinance for not having a tag light which is not an arrestable offense."

9

traffic stop and Defendant's subsequent arrest were each supported by their own probable cause. Because Defendant failed to object to the magistrate judge's finding that the officers had probable cause for the vehicle stop, he waived his right to challenge this finding on appeal. *See* Fed. R. Crim. P. 59(b)(2); 11th Cir. R. 3-1; *Perkins*, 787 F.3d at 1343. We therefore decline to address his argument.[5]

### B.     Admission of Defendant's Statement

Defendant also asserts that the district court erred at sentencing by considering a statement he made to Officer Moore, which was obtained in violation of *Miranda*. At issue is the district court's admission of testimony at the sentencing hearing pertaining to a statement Defendant made while he was in custody but before he received *Miranda* warnings. Specifically, Officer Moore testified that he asked Defendant, "Hey, man, you were really reaching for that gun," and Defendant responded, "I didn't want to go back to jail, officer."

---

[5] Even if we exercised our discretion to review Defendant's argument for plain error, he cannot show that the district court committed error, let alone plain error. *See* 11th Cir. R. 3-1. The officers had probable cause to stop Defendant's vehicle because they observed Defendant commit a traffic violation. Georgia law requires that "[e]ither a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." O.C.G.A. § 40-8-23. Officer Romer testified that Defendant's car did not have functioning tag lights and that his license plate could not be read. Officer Munson testified that Defendant's car "had no tag lights." The officers' testimony—which was found credible by the district court—established that Defendant committed a traffic violation under § 40-8-23(d) because his tag was not being illuminated, regardless of how far away the officers were when they observed the violation. *See Carnes v. State*, 667 S.E.2d 620, 621 (Ga. Ct. App. 2008) ("There was probable cause for the initial stop, based on the officer's observance of a traffic violation, the nonfunctioning tag light." (quotations omitted)).

We review issues of law at sentencing *de novo*. *See United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010) (reviewing *de novo* the voluntariness of a defendant's statements); *see also United States v. Nichols*, 438 F.3d 437, 439 (4th Cir. 2006) (reviewing *de novo* whether evidence obtained in violation of *Miranda* is admissible at sentencing). "A sentencing court may consider any information, (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (quotation omitted).

The Supreme Court's decision in *Miranda* protects a defendant's "Fifth Amendment privilege against self-incrimination by requiring law enforcement authorities to advise a [defendant] subject to custodial interrogation of certain rights." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010). A statement made in violation of *Miranda* is not admissible at trial. *Miranda*, 384 U.S. at 444–45.

The district court admitted Defendant's statement, relying in part on our decision in *United States v. Lynch*, 934 F.2d 1226 (11th Cir. 1991). In *Lynch*, we held in the context of the Fourth Amendment that the exclusionary rule does not

11

apply to sentencing proceedings and that evidence seized in violation of the Fourth Amendment can be introduced at sentencing as long as it is reliable. *Lynch*, 934 F.2d at 1235–37. Defendant argues that *Lynch* is not applicable here because a statement obtained in violation of *Miranda* is distinguishable from physical evidence obtained in violation of the Fourth Amendment.

We have not specifically addressed whether statements made in violation of *Miranda* can be introduced at sentencing. At least two other federal appellate courts, however, have determined that such statements may be considered at sentencing if they are voluntary and otherwise reliable. *See Nichols*, 438 F.3d at 442 ("We agree with the Seventh Circuit that statements obtained in violation of *Miranda*, if they are otherwise voluntary, may generally be considered at sentencing."); *Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1388 (7th Cir. 1994) (en banc) (concluding in the context of a federal habeas corpus petition that, even assuming a confession was obtained in violation of *Miranda*, it did not require exclusion from a state sentencing proceeding because "[t]he exclusionary rule is generally inapplicable during sentencing"); *see also United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) ("[T]hat is why *Miranda* generally does not apply at sentencing. A sentencing court may consider 'statements obtained in violation of *Miranda*, if they are otherwise voluntary' and reliable." (quoting *Nichols*, 438 F.3d at 442)). Further, the Supreme Court has

12

concluded that statements obtained in violation of *Miranda*, while not admissible as part of the Government's case-in-chief, may be considered for other purposes. *See, e.g., Oregon v. Elstad*, 470 U.S. 298, 307 (1985) (explaining that statements obtained in violation of *Miranda* may still be used for impeachment purposes). Given the district court's broad discretion in making a sentencing determination, as well as the reasoning of *Lynch* and the decisions of our sister circuits, we conclude that statements obtained in violation of *Miranda* may be considered at sentencing if they are voluntary and reliable. *See United States v. Tucker*, 404 U.S. 443, 446 (1972) ("Before making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to kind of information he may consider, or the source from which it may come.").

With that in mind, we conclude that the district court did not err by considering Defendant's post-arrest statement because the record shows that the statement was voluntary and reliable. *See Lynch*, 934 F.2d at 1235–37; *see also Nichols*, 438 F.3d at 443; *Del Vecchio*, 31 F.3d at 1388. At the sentencing hearing, Officer Moore testified that Defendant was in handcuffs in the back of the patrol when he made the statement to Officer Moore. Officer Moore escorted Defendant to the patrol car by grabbing his arm but did not do so forcefully. None of the officers drew their weapons, threatened Defendant, or made him any promises in exchange for speaking with them. Officer Moore spoke calmly to Defendant and

Defendant responded to him in a friendly manner. Based on Officer Moore's detailed testimony surrounding the circumstances of Defendant's arrest, the district court determined that Defendant's statement that he did not want to go back to jail was relevant, reliable, and not coerced. *Cf. Hubbard v. Haley*, 317 F.3d 1245, 1252–53 (11th Cir. 2003) (explaining that whether a statement is voluntary depends on the totality of the circumstances, including several factors such as "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police").

Because the record shows that Defendant's statement was voluntary and reliable, the district court did not err by considering Defendant's post-arrest statement at sentencing. *See Lynch*, 934 F.2d at 1235–37. But even had there been no acknowledgement by Defendant that he was reaching for his gun, there was other evidence supporting this inference. Specifically, the officers testified that after Defendant refused their commands to lower his window, instead continuing to move within the car, they opened the car door and saw him reaching down for something along the floorboard of his side of the vehicle. The gun was later located in the area where Defendant had been reaching.

## III.    <u>CONCLUSION</u>

For the above reasons, Defendant's conviction and sentence are

**AFFIRMED**.